**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., d/b/a VPX/Redline, | |
| Plaintiff, | CIVIL ACTION NO. 3:11-CV-975 |
| v. | |
| USA SPORTS, LLC, JOSEPH MIES, and ROBERT O'LEARY, | (JUDGE CAPUTO) |
| Defendants. | |

## MEMORANDUM

Defendants USA Sports, LLC ("USA Sports"), Joseph Mies ("Mies"), and Robert O'Leary ("O'Leary") move to dismiss Plaintiff Vital Pharmaceuticals' ("VPX") First Amended Complaint.  Because VPX sufficiently states claims for successor liability against USA Sports and for breach of fiduciary duty against Mies, Defendants' motion to dismiss Counts I-IV and Count VII will be denied.  However, because VPX seeks relief against a non-party to this action in its claim to set aside a fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act, and because VPX fails to adequately allege a claim for breach of the Uniform Commercial Code, Defendants' motion to dismiss Counts V-VI will be granted.

## I. Background

The facts as alleged in VPX's First Amended Complaint are as follows:

VPX is a leading provider of dietary supplements and beverages.  From late December 2007 through February 2008, VPX delivered $579,274.65 in products to Bob

O'Leary Health Food Distributor Co., Inc. d/b/a Boss Nutrition ("BOSS"), a wholesale distributor of nutritional and health products.[1]  O'Leary was the sole owner of BOSS until approximately October 1, 2004.  At that time, O'Leary sold his entire interest in BOSS to Dynamic Health Products, Inc. ("DHP"), but O'Leary remained as landlord for BOSS/DHP.  Articles of Merger confirming the BOSS/DHP merger, however, were not filed with the State of Florida until late March 2008.[2]

The DHP/BOSS merger occurred subject to a merger agreement executed by Mandeep K. Taneja.  After the merger, Mandeep K. Taneja became the CEO and Director for BOSS, while also remaining as the CEO, President, Director and principal shareholder of DHP.  Similarly, BOSS' Chief Operating Officer, Mies, became an employee of DHP.

In early April 2008, VPX filed a lawsuit against BOSS in the 17th Judicial Circuit in and for Broward County, Florida (the "Florida action"), docketed as case number 08-14868.  VPX obtained summary judgment in the Florida action and final judgment was ultimately entered in favor of VPX and against BOSS in the amount of $566,717.73 plus interest.

VPX, though, has been unable to collect on the final judgment in the Florida action because DHP/BOSS sold the assets of BOSS to USA SPORTS, LLC ("USA Sports"), a wholesale distributor of nutritional and health products, on June 30, 2009 for

---

[1] BOSS' principal place of business was 701 North Keyser Avenue, Scranton, PA 18504-9766.
[2] DHP is an active Florida Corporation and subsidiary of GeoPharma, Inc., a growing pharmaceutical company engaged in the manufacture and distribution of generic drugs and functional food products.

$2,223,351.03.[3]  The purchase was financed in part by a personal loan from O'Leary to USA Sports in exchange for a ten percent (10%) equity ownership interest in USA Sports and a position of "industry advisor" for USA Sports.  Prior to the sale, DHP/BOSS had assets valued at $3,306,409.73.  The sale of assets included inventory, accounts receivable, and other intangible assets.  As a result of the sale, DHP/BOSS was left with virtually no assets.

USA Sports retained multiple BOSS employees in identical capacities after the purchase.  These employees included: (1) BOSS controller Mike Kilzi; (2) BOSS regional manager Ken Collins; (3) BOSS marketing manager Jim Rainey; (4) BOSS sales representative Michelle Kalinoski; (5) BOSS employee Angela Balsta; and (6) BOSS Chief Operating Officer Joseph Mies.  Moreover, USA Sports operates out of the same facilities and location of DHP/BOSS and engages in a business virtually identical to DHP/BOSS.

VPX, despite being engaged in litigation with BOSS in Florida, never received notice of the proposed sale of DHP/BOSS to USA Sports.  VPX twice deposed Mies in the Florida action and Mies failed to notify VPX of the pending sale of DHP/BOSS to USA Sports.  Mies also prepared sworn answers to Interrogatories in the Florida action in which he identified himself as Chief Operating Officer of BOSS, without revealing the contemplated sale of DHP/BOSS to USA Sports.

---

[3] USA Sports has its principal place of business at 701 North Keyser Avenue, Scranton, PA 18504-9766.

VPX instituted this action against USA Sports, Mies, and O'Leary on May 20, 2011.  VPX subsequently filed its First Amended Complaint on July 22, 2011.  The First Amended Complaint contains seven counts: (1) successor liability against USA Sports based on a "mere continuation" theory; (2) successor liability against USA Sports based on a "de facto merger" theory; (3) successor liability against USA Sports based on a fraudulent transaction to escape liability theory; (4) successor liability against USA Sports based on a transfer without fair and/or adequate consideration theory; (5) breach of Uniform Commercial Code Section 9-504 against USA Sports, Mies, and O'Leary; (6) action to set aside fraudulent transfer under Pennsylvania Uniform Fraudulent Transfer Act against USA Sports; and (7) breach of fiduciary duty against Mies.  VPX's First Amended Complaint also seeks injunctive relief against DHP, a non-party to this action, and to have the transfer between DHP/BOSS and USA Sports set aside.

USA Sports, Mies, and O'Leary moved to dismiss the First Amended Complaint on September 9, 2011.  Defendants argue that VPX's claims are defective and fail to state a claim for which relief can be granted.  Alternatively, Defendants seek dismissal of VPX's claims for failure to join an indispensable party as VPX seeks equitable relief against a non-party to this action.  Defendants' motion to dismiss has been fully briefed and argued, and is now ripe for disposition.

4

## II. Discussion

**A. Legal Standards**

1. **Motion to Dismiss Under 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a

complaint, in whole or in part, for failure to state a claim upon which relief can be

granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the

Court's role is limited to determining if a plaintiff is entitled to offer evidence in support

of their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d

90 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id*.

A defendant bears the burden of establishing that a plaintiff's complaint fails to state a

claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

"A pleading that states a claim for relief must contain ... a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

The statement required by Rule 8(a)(2) must give the defendant fair notice of what the

... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93,

127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Detailed factual

allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory

statements will not do; "a complaint must do more than allege the plaintiff's entitlement

to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a

5

complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See*

6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir.1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir.1997)).

## 2. Motion to Dismiss Under 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Thus, Rule 19 specifies the circumstances "in which the joinder of a particular party is compulsory." *Cummings v. Allstate Ins. Co.*, no. 11-02691, 2011 WL 6779321, at *3 (E.D. Pa. Dec. 27, 2011) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)). Rule 19 states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The analysis under Rule 19 requires a court to first determine whether the absent party should be joined as a "necessary" party under Rule 19(a). *See Gen. Refractories Co.*, 500 F.3d at 312. "If a party should be joined but joinder is not feasible . . . , the court must determine whether the absent party is indispensable under Rule 19(b)." *Cummings*, 2011 WL 6779321, at *3 (citing *Altman v. Liberty Helicopters*, no. 10-545, 2010 WL 2998467, at *2 (E.D. Pa. July 29, 2010)). "If the party is indispensable, then the action cannot go forward." *Id*.

As with a motion to dismiss pursuant to Rule 12(b)(6), a court reviewing a 12(b)(7) motion must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See id*. at *3 (citing *Pittsburgh Logistisics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009)). A court deciding a Rule 12(b)(7) motion "may consider 'relevant, extra-pleading evidence' when ruling on a rule 12(b)(7) motion." *Id*. at *3 (quoting *Citizen Band Potawatomi Indian Tribe of OK v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994)).

**B. Dismissal of VPX's First Amended Complaint**

**1. Successor Liability Claims**

USA Sports moves to dismiss the successor liability claims in Counts I-IV of the First Amended Complaint.  USA Sports argues that VPX's allegations merely establish that USA Sports obtained a corporate division from DHP.  Thus, USA Sports opines that VPX's allegations are insufficient because USA Sports is not alleged to be in continuation of a unique, predecessor corporate entity.  Conversely, VPX argues that

DHP held BOSS out as a going concern.  VPX therefore concludes that the corporate structure of BOSS, not DHP, controls the viability of its successor liability claims.

Pennsylvania law is clear regarding successor liability.  "When one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Cont'l Ins. Co. v. Schneider, Inc.,* 810 A.2d 127, 131, 2002 PA Super 323, P5 (Pa. Super. 2002) (quoting *Hill v. Trailmobile, Inc.,* 412 Pa. Super. 320, 326, 603 A.2d 602, 605 (Pa. Super. 1992), *abrogated by Schmidt v. Boardman Co.,* 608 Pa. 327, 11 A.3d 924 (2011)).

> This general rule of non-liability can be overcome, however, if (i) the purchaser expressly or implicitly agreed to assume liability, (ii) the transaction amounted to a de facto merger, (iii) the purchasing corporation was merely a continuation of the selling corporation, (iv) the transaction was fraudulently entered into to escape liability, or (v) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.

*Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 513 F. Supp. 2d 304, 315 (E.D. Pa. 2007) (citing *Cont'l Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 873 A.2d 1286, 1291 (2005)).

### a. "Mere Continuation"

USA Sports moves to dismiss Count I of the First Amended Complaint on the grounds that VPX failed to adequately allege that USA Sports is a "mere continuation" of DHP/BOSS.  Although courts generally "analyze the second and third exceptions- 'de facto merger' and 'mere continuation'- identically," *Berg Chilling Sys., Inc. v. Hull Corp.*,

435 F.3d 455, 468 (3d Cir. 2006), a "mere continuation occurs when 'a new corporation is formed to acquire the assets of an extant corporation, which then ceases to exist.'" *Cont'l Ins. Co.*, 810 A.2d at 134, 2002 PA Super 323, P17 (quoting *Commonwealth v. Lavelle*, 382 Pa. Super. 356, 375, 555 A.2d 218, 227 (Pa. Super. 1989)). As a result, "there exists one corporation which merely changes its form and ordinarily ceases to exist upon the creation of the new corporation which is its successor. The primary elements of the continuation exception are identity of the officers, directors, or shareholders, and the existence of a single corporation following the transfer." *Id*.

Here, VPX sufficiently alleges facts to proceed on a "mere continuation" theory of successor liability. In particular, VPX alleges continuity of corporate officers, as VPX identifies Mies as the Chief Operating Officer of both BOSS and USA Sports. Additionally, VPX alleges continuity of ownership, by asserting that O'Leary owned one hundred percent (100%) of BOSS until 2004 and received a ten percent (10%) interest in USA Sports in 2009. While the Court recognizes USA Sports' position that the corporate structure of DHP, and not BOSS, to be the relevant predecessor entity for determining successor liability in this matter, the Court finds this argument premature. Because the issue on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims," *Oatway v. Am. Int'l Grp., Inc.,* 325 F.3d 184, 187 (3d Cir. 2003), the Court will not resolve the predecessor entity issue on a motion to dismiss. Thus, VPX will be permitted to proceed on its claim for successor liability on a "mere continuation" of business theory.

10

### b. "De Facto Merger"

USA Sports similarly moves to dismiss Count II on the grounds that VPX has not sufficiently alleged facts that would support a "de facto merger" theory. Four factors guide the de facto merger analysis: (1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liability ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation. *See Cont'l Ins. Co.*, 810 A.2d at 134, 2002 PA Super 323, P17.

Courts in the Third Circuit generally consider continuity of ownership to be the critical factor in a successful successor liability claim under Pennsylvania law. *Berg Chilling Sys., Inc.,* 435 F.3d at 469. Yet, absolute continuity of ownership is not required. *See id.* Instead, "only some continuity of ownership is required. . . . the critical 'continuity of ownership' appears to be whether the owners retained some ongoing interest in their assets." *In re Asousa P'ship*, No. 01-12295DWS, 2006 WL 1997426 (Bankr. E.D. Pa. June 15, 2006) (quoting *United States v. Gen. Battery Corp., Inc.*, 423 F.3d 294, 307 (3d Cir. 2005)).

The second factor in the "de facto merger" analysis, cessation of the ordinary business, ensures that a vital characteristic of a merger exists. *See Chicago Title Ins. Co.*, 513 F. Supp. 2d at 315. Nevertheless, "the predecessor corporation need not actually dissolve; reduction to an assetless shell is sufficient." *Id*. at 315 (citing *Lavelle*,

11

382 Pa. Super. at 375, 555 A.2d at 227). The third factor in the "de facto merger" analysis, assumption of liabilities, considers "whether the seller corporation has assumed the obligations ordinarily necessary for uninterrupted continuation of normal business operations." *Berg Chilling Systems, Inc.*, 435 F.3d at 470.

The final factor in the "de facto merger" analysis, continuity of the general business operation, considers whether the successor "'continued the enterprise of the seller corporation.'" *Id*. at 469. This factor includes an analysis of whether there is a continuity of management, personnel, physical location, assets, and the general business operations of the merging entities. *See id*.

As with VPX's "mere continuation" theory of successor liability, VPX sufficiently alleges a "de factor merger" theory of successor liability. While VPX does not allege that USA Sports assumed DHP/BOSS' liabilites, VPX sufficiently pleads the other "de facto merger" factors. Specifically, VPX alleges continuity of management, personnel, physical location, assets, and general business operations between USA Sports and DHP/BOSS. Likewise, VPX alleges with particularity continuity of ownership between DHP/BOSS and USA Sports and that BOSS' assets were virtually depleted by the asset sale. Again, while USA Sports argues that DHP is the relevant predecessor entity for a "de facto merger" analysis, it would be improper for the Court to make such a determination at this time. VPX may proceed with its successor liability claim under a "de facto merger" theory.

### c. Fraudulent Transaction to Escape Liability

USA Sports moves to dismiss Count III and claims that VPX failed to allege a fraudulent transaction to escape liability with sufficient specificity.  Under the Pennsylvania Uniform Fraudulent Transfer Act, two types of transfers may be fraudulent. *See* 12 Pa. Cons. Stat. Ann. §§ 5104(a); 5105(a) (West 2011).  First, a transfer may be fraudulent when made "with actual intent to hinder, delay or defraud any creditor of the debtor. *Id*.  Alternatively, a transfer by an insolvent debtor may be fraudulent where the debtor does not receive a reasonably equivalent value in exchange for the transfer. *See id*.

The Pennsylvania Uniform Fraudulent Transfer Act lists eleven "badges of fraud" for a court to consider when determining whether a transfer was made with actual intent to defraud creditors. *See* 12 Pa. Cons. Stat. Ann. § 5104(b) (West 2011).  The "badges of fraud" are:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably

13

equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id*.

Constructive fraud, on the other hand, pursuant to 12 Pa. C.S.A. § 5104(a)(2), involves transfers where "the debtor did not receive 'reasonably equivalent value,' and the debtor was insolvent at the time of the transfer, or became insolvent as a result." *United States v. McCullough*, No. 10-1507, 2011 WL 4737412, at *5 (W.D. Pa. Oct. 6, 2011).

USA Sports argues that VPX failed to plead the fraud based claim with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b). Rule 9(b) provides that a party "alleging fraud or mistake, . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. In accordance with Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *as recognized in In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300,

14

323 n.22 (3d Cir. 2010)).  Stated differently, "[t]he particularity required by Rule 9(b)

'means the who, what, where, when, and how.'" *United States v. Rocky Mountain*

*Holdings, Inc.,* No. 08-3381, 2009 WL 564437, at *4 (E.D. Pa. Mar. 4, 2009) (quoting

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.

1997)).  The particularity required for pleading fraud claims is "further tempered in those

circumstances 'where it can be shown that the requisite factual information is peculiarly

within the defendant's knowledge or control.'" *Rocky Mountain Holdings, Inc.*, 2009 WL

564437, at *5 (quoting *In re Total Containment, Inc.*, 335 B.R. 589, 600 (Bankr. E.D.

Pa. 2005).  Lastly, the second sentence of Rule 9(b) permits intent to be averred

generally. *See* Fed. R. Civ. P. 9(b).   As such, "a plaintiff need not plead intent with the

same particularity required of the circumstances constituting the alleged fraudulent

conveyances." *Rocky Mountain Holdings, Inc.*, 2009 WL 564437, at *5.

Here, VPX adequately alleges facts that USA Sports may be liable on a

fraudulent transfer to escape liability theory of successor liability.  Although VPX does

not allege facts to support each of the eleven "badges of fraud" identified in 12 Pa.

C.S.A. § 5104(b), VPX's First Amended Complaint asserts multiple "badges of fraud"

with the particularity required by Rule 9(b).  In particular, VPX alleges that the transfer

was concealed, that the transfer occurred near the time that a substantial debt was

incurred, that BOSS had been sued prior to the transfer, and that the value of the

assets transferred were not reasonably equivalent to the consideration DHP/BOSS

received.  Contrary to USA Sport's contention, VPX has detailed these allegations with

sufficient particularity to satisfy the pleading requirements of Rule 9(b) and the

mandates of *Iqbal* and *Twombly*. *See* Fed. R. Civ. P. 9(b); *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### d. Without Adequate Consideration

USA Sports moves to dismiss Count IV on the grounds that VPX did not

adequately allege successor liability based on a transfer without adequate

consideration.  Essentially, USA Sports contends that VPX failed to allege a successor

liability claim based on constructive fraud with sufficient particularity.

As discussed previously, *see supra* Part II.B.1.c., constructive fraud involves

transfers where "the debtor did not receive 'reasonably equivalent value,' and the

debtor was insolvent at the time of the transfer, or became insolvent as a result." *United

States v. McCullough*, No. 10-1507, 2011 WL 4737412, at *5 (W.D. Pa. Oct. 6, 2011).

As noted by the Court in *McCullough*, whether "reasonably equivalent value was

exchanged is an inherently factual issue to be determined on a case-by-case basis."

*See id*. at *6 (citing *Hemstreet v. Brostmeyer*, 258 B.R. 134, 138 (Bankr. W.D. Pa.

2001)); *see also In re Asousa P'ship*, No. 01-12295DWS, 2006 WL 1997426 (Bankr.

E.D. Pa. June 15, 2006).

VPX adequately alleges that the transfer of BOSS to USA Sports amounted to

constructive fraud.  Assuming all facts as alleged in the First Amended Complaint as

true, VPX asserts that the sale of BOSS to USA Sports caused DHP/BOSS to become

insolvent and that USA Sports did not pay sufficient consideration for the assets

purchased.  Moreover, as "reasonably equivalent value" is "an inherently factual issue",

*McCullough*, 2011 WL 4737412, at *6, the Court finds that VPX sufficiently alleges a

claim for successor liability based on a without adequate consideration theory.

16

## 2. Breach of Uniform Commercial Code Section 9-504

USA Sports, Mies, and O'Leary move to dismiss Count V of VPX's First Amended Complaint.  However, neither Defendants, nor VPX, briefed the sufficiency of Count V.  Nevertheless, the Court will address whether Count V sufficiently states a claim for breach of Section 9-504 of the Uniform Commercial Code.

Section 9504 of the Pennsylvania Uniform Commercial Code, 13 Pa. Cons. Stat. Ann. § 9504 (West 2003), titled "Indication of Collateral," states that a financing statement sufficiently indicates the collateral which it covers if a description of the collateral is provided or there exists an indication that the financing statement covers all assets or personal property.[4]  Here, VPX's First Amended Complaint does not provide any allegations regarding a financing statement of collateral.  As such, Count V of VPX's First Amended Complaint will be dismissed.  VPX, however, will be given leave to amend in order to properly plead the claim in Count V.

## 3. Action to Set Aside Fraudulent Transfer

USA Sports, Mies, and O'Leary seek to dismiss Count VI of VPX's First Amended Complaint.  In particular, Defendants argue that VPX failed to adequately state a claim for an action to set aside a fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act.  Alternatively, Defendants argue that VPX failed to join an indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

---

[4] Alternatively, VPX's claim in Count V may be based on 13 Pa. C.S.A. §§ 9610, 9611, which "contain the content of prior Section 9504." *See Cont'l Ins. Co. v. Schneider, Inc.,* 810 A.2d 127, 131 n.2, 2002 PA Super 323, P6 n.2 (Pa. Super. 2002).  Nevertheless, even under Sections 9610 and 9611, VPX fails to allege a default of a secured obligation or a sale of collateral by a secured party.

Insofar as the First Amended Complaint seeks to set aside the sale of BOSS and obtain injunctive relief against a non-party, the Court agrees that DHP/BOSS is an indispensable party to the action.  Although courts across jurisdictions are split as to whether the debtor/transferor is an indispensable party to an action to set aside a fraudulent transfer, *see, e.g.,  Brown Bark II, L.P. v. Coakley*, 934 N.E.2d 991, 997 (Ohio Ct. App. 2010) ("opinions about whether the debtor is a necessary party to a fraudulent transfer action are less uniform"), the United States District Court for the Eastern District of Pennsylvania has stated that "both the debtor/transferor and the transferee are necessary parties to a fraudulent transfer action." *Universal Computer Consulting, Inc. v. Pitcairn Enter., Inc.*, No. 03-2398, 2005 WL 2077269, at *15 (E.D. Pa. Aug. 26, 2005).  Moreover, courts are generally unable to issue injunctive relief against a non-party to an action. *See, e.g., Elliott v. Kiesewetter*, 98 F.3d 47, 56 n.5 (3d Cir. 1996) ("a non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought"); *Breeland v. Doll*, 3:11-CV-1415, 2011 WL 4950050 (M.D. Pa. Sept. 22, 2011); *Serrano v. Folino*, No. 05-1118, 2007 WL 9606184, at *2 (W.D. Pa. Mar. 21, 2007) ("claims for injunctive relief against any non-party to this action cannot be granted").[5]

Here, Count VI seeks to set aside a transfer and for an issuance of injunctive relief against a non-party to this action.  Since the Court would be unable to grant the relief sought by VPX, Count VI will be dismissed.

---

[5] VPX's counsel conceded at oral argument that the Court would be without authority to enforce injunctive relief against a non-party to this action.

**4. Breach of Fiduciary Duty**

Mies moves to dismiss Count VII, breach of fiduciary duty, on the grounds that:

(1) VPX failed to allege sufficient facts to set forth a breach of fiduciary duty claim; and

(2) the claim is barred by Pennsylvania's two-year statute of limitations. *See Koken v.*

*Colonial Assurance Co.*, 885 A.2d 1078, 1093 (Pa. Cmwlth. 2005) (citing 42 Pa. Cons.

Stat. Ann. § 5524(7)). To state a claim for a breach of fiduciary duty, VPX must allege:

"that [Mies] negligently or intentionally failed to act in good faith and solely for the

benefit of [VPX] in all matters for which he or she was employed; (2) that [VPX] suffered

injury; and (3) that [Mies'] failure to act solely for the VPX's benefit . . . was a real factor

in bring[ing] about [VPX's] injuries." *Rios v. Cabrera*, No. 3:10-CV-636, 2010 WL

2650474, at *4 (M.D. Pa. July 1, 2010) (quoting *McDermott v. Party City Corp.*, 11 F.

Supp. 2d 612, 626 (E.D. Pa. 1998)). Important to this action, "Pennsylvania common

law imposes a fiduciary duty upon corporate officers in favor of creditors, as well as to

the corporation, when the corporation is insolvent." *In re Total Containment, Inc.*, No.

04-13144bf, 2008 WL 682455, at *9 n.11 (Bankr. E.D. Pa. Mar. 5, 2008).

Although Mies contends that the face of VPX's First Amended Complaint

demonstrates that the breach of fiduciary duty claim is clearly time barred, the Court

disagrees. Indeed, "a court may only dismiss a claim under 12(b)(6) where the bar is

'apparent on the face of the complaint.'" *Metso Paper USA, Inc. v. Bostik, Inc.*, No.

3:08-CV-772, 2011 WL 2670320, at *3 (M.D. Pa. July 8, 2011) (quoting *Robinson v.*

*Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). As a result, "the determination of whether

a plaintiff's claim is barred by the statute of limitations involves issues of fact and

therefore, the statute of limitations is normally addressed at the summary judgment

stage or at trial." *Kiser v. A.W. Chesterton Co.*, 770 F. Supp. 2d 745, 747 (E.D. Pa. 2011). Here, VPX commenced this action on May 20, 2011. While allegations concerning Mies' conduct occurred as early as March of 2009, the date with which VPX discovered Mies' alleged breach is not "apparent on the face of the complaint." *Metso Paper USA,* 2011 WL 2670320, at *3. As such, Count VII will not be dismissed based on the statute of limitations.

Moreover, Mies argues that he did not owe a fiduciary duty to VPX until the point that DHP/BOSS became insolvent. Mies fixes insolvency on June 30, 2009- the date with which USA Sports purchased BOSS. Mies' theory is that VPX's allegations of Mies' breaches of duty occurred before insolvency. Therefore, Mies opines that VPX has not stated a claim for breach of fiduciary.

The Court disagrees with Mies' conclusion. Although Mies fixes insolvency on June 30, 2009, Mies' fiduciary duty to creditors may have arisen before this date. For example, Pennsylvania law defines "insolvent" as: "(i) having generally ceased to pay debts in the ordinary course of business other than as a result of bona fide dispute; (ii) being unable to pay debts as they become due; or (iii) being insolvent within the meaning of Federal bankruptcy law." 13 Pa. Cons. Stat. Ann. § 1201(b)(23). Here, VPX alleges that it was a creditor of DHP/BOSS and that DHP/BOSS was insolvent, imposing a fiduciary duty on Mies for the benefit of DHP/BOSS' creditors. Accordingly, VPX pleads enough "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 550 U.S. at 556), making dismissal of Count VII inappropriate. VPX will be permitted to proceed with the breach of fiduciary duty claim.

### III. Conclusion

For the reasons stated above, Defendants' motion to dismiss will be granted in part and denied in part.

An appropriate order follows.


March 7, 2012                                          /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge